# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MARGARET B. KWOKA,

   *Plaintiff*,

  v.

INTERNAL REVENUE SERVICE,

   *Defendant*.

Civil Action No. 17-cv-1157 (DLF)

## **MEMORANDUM OPINION**

  Professor Margaret Kwoka studies the Freedom of Information Act (FOIA) and how the government administers it. She asked the Internal Revenue Service (IRS) for nine categories of records relating to FOIA requests the IRS received during fiscal year 2015, including some requesters' names and all requesters' organizational affiliations. The IRS invoked FOIA exemptions 3 and 6 and withheld that information, and before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, the Court will grant in part and deny in part both motions.

## I. BACKGROUND

  Kwoka is a law professor whose research focuses on government secrecy and agencies' administration of FOIA. Kwoka Decl. ¶ 1, Dkt. 10-1. On January 11, 2017, she submitted a FOIA request to the IRS asking for "records reflecting a list or log of FOIA requests received in Fiscal Year 2015." FOIA Request, Dkt. 9-2 Ex. 1. She specified a list of nine categories of information, including "[t]he <u>name of the requester</u> for any third-party request (for first-party requests I accept this will be redacted)" and "[t]he <u>organizational affiliation</u> of the requester, if there is one." *Id.*

Using its Automated Freedom of Information Act (AFOIA) system, the IRS provided some of the information Kwoka sought on March 8, 2017. Def.'s Statement of Facts & Pl.'s Response ¶¶ 9, 12, Dkt. 10. That information did not include the names or organizational affiliations of requesters. *Id.* Kwoka filed an administrative appeal and argued that the IRS improperly withheld those two categories of information. *Id.* ¶ 17. On April 11, 2017, the appeals office of the IRS found that the IRS had properly invoked exemptions 3 and 6 in withholding the names and organizational affiliations of requesters. *Id.* ¶ 18. Kwoka sued on June 14, 2017, *id.* ¶ 19, and in September and October of 2017, the parties cross-moved for summary judgment, Dkts. 9, 10.

## II. LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In FOIA litigation, when a federal agency moves for summary judgment, all facts and inferences must be viewed in the light most favorable to the requester, and the agency bears the burden of showing that it complied with FOIA. *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009). To prevail under Rule 56, a federal agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from [FOIA's] inspection requirements." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam) (quoting *Nat'l Cable Television Ass'n, Inc. v. F.C.C.*, 479 F.2d 183, 186 (D.C. Cir. 1973)). The agency must explain in reasonable detail why an exemption applies to any withheld records. *See Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 147 (D.C. Cir. 2006).

"[T]he vast majority of FOIA cases can be resolved on summary judgment . . . ." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

Here, the IRS has invoked FOIA exemptions 3 and 6 to withhold the names and organizational affiliations of past FOIA requesters. Exemption 3 allows an agency to withhold matters that are "specifically exempted from disclosure by statute" under certain conditions, 5 U.S.C. § 552(b)(3), and the IRS points to another statute prohibiting disclosure of "any return or return information," 26 U.S.C. § 6103(a). "Return information" is broadly defined to include "a taxpayer's identity" and "whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing." *Id.* § 6103(b)(2). "Taxpayer" is also broadly defined to include corporations, trusts, estates, partnerships, and associations. *See* 26 U.S.C. § 7701(a)(1); *id.* § 7701(a)(14). Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The IRS bears the burden of establishing that disclosure of the records is protected under exemptions 3 and 6. *See U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).

## III. ANALYSIS

### A. Exemption 3

The IRS argues that it need not reveal the names or organizational affiliations of FOIA requesters because doing so could "reveal protected tax information about the requester including, but not limited to[,] the identity of a taxpayer." Def.'s Mot. at 10, Dkt. 9. The IRS maintains a publicly accessible FOIA log that lists FOIA request numbers and other information,

including a "request detail" column that lists the topic of the request.[1]  The IRS argues that if Kwoka were to receive the names and organizational affiliations of requesters, she could cross-reference that information with the online log and deduce the identities of the taxpayers.  Def.'s Mot. at 10–12; Def.'s Reply at 3–6, Dkt. 14.

But the IRS's conclusion does not follow from its premises.  Even armed with the information she requests and the publicly accessible FOIA log, in most cases Kwoka could not know with any certainty the identity of particular taxpayers.  Neither the log nor the information Kwoka requests generally reveals the *target* of a FOIA request—i.e., the person whose tax records the requester is seeking.  Thus, for third-party requests in which a requester submits a request for someone else's information, knowing the name and organizational affiliation of the requester (from her own FOIA request) in conjunction with the topic of the request (from the publicly accessible log) would not reveal the identity of the *target* of the request.

The IRS pushes back, arguing that "there are many situations in which the disclosure of the identities of FOIA requesters . . . , combined with the [topics] of their requests, could disclose [protected information]."  Def.'s Reply at 4.  For example, when "a corporate shareholder who is aware that a company is under examination by the IRS [] submit[s] a FOIA request for the corporation's examination files," *id.* at 4, the IRS argues, "[a] quick search of the internet would [be] enough to connect the corporate shareholder with the corporation whose examination files he has requested, and to reveal that the corporation is under examination by the IRS," *id.* at 5.

---

[1] Kwoka has submitted a declaration with an exhibit containing the first five pages of the IRS's 2015 FOIA log.  *See* Llewellyn Decl. ¶ 1, Ex. 1, Dkt. 10-2.  The full log is available online at https://www.irs.gov/pub/irs-utl/2015-irs-foia-log.pdf.  As the log reveals, most of the topics are vaguely worded—for example, "1040," "60 day letter," "Account Transcript," "Collection/Examination," etc.  *See id.*

4

But again, that conclusion does not follow. In the IRS's hypothetical, the "corporate shareholder" *might* be requesting information about the corporation, but he might also be requesting information about any number of other organizations (or individuals).[2] And importantly, Kwoka would have no way of knowing. The same is true of the IRS's other example—"the request for records of an estate return or examination of an estate return by the relative of a deceased taxpayer." *Id.* Here again, Kwoka would have no way of knowing whether the requester was indeed asking for tax information about the deceased relative or whether the requester was asking about anyone else (and simply happened to have a recently deceased relative).

In most cases, the same is true for first-party requesters who request their own tax return information. Kwoka concedes that the IRS can redact the names of first-party requesters, *see* FOIA Request; she asks only for their organizational affiliations. But because most organizations have many affiliated individuals, knowing a requester's organizational affiliation—even in conjunction with the topic of the request—would not ordinarily reveal the identity of the requester (and thus the identity of the taxpayer). There may be a few exceptions where, for example, a particular organization has only one affiliate, or where a topic listed in the publicly accessible FOIA log is so specific (in contrast to the majority of the entries) that it would, in conjunction with the requester's organizational affiliation, effectively reveal the first-party requester's identity. *See* Def.'s Reply at 8 (arguing that "a FOIA request made by the

---

[2] True, a third-party requester must have either express authorization from a taxpayer or a material interest in the information in order to receive tax return information about another taxpayer. *See* 26 U.S.C. § 6103(c) (express authorization); *id.* § 6103(e) (material interest). But knowing that information would still not reveal any taxpayer's identity, because a third-party requester like Kwoka would have no way of knowing which taxpayers a requester might have express authorization from or a material interest in.

5

owner of an individually held or closely held company, in concert with the subject of the request, would be enough to reveal the identity of the individual making the request"). Kwoka also concedes that "[w]here an individual requests tax records about the organization that is identical to the individual's organizational affiliation as recorded in the IRS's records, . . . the organizational affiliation would be subject to redaction." Pl.'s Cross-Mot. at 9, Dkt. 10.

If these exceptions in fact exist, the IRS can make redactions. But it will have to justify its withholding "with reasonably specific detail" to "demonstrate that the information withheld logically falls within the claimed exemption." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Because of the logical problems with the IRS's argument as identified above, the IRS has failed to justify its blanket invocation of exemption 3.

### B. Exemption 6

Exemption 6 employs a balancing test and allows agencies to withhold certain information when disclosing it would result in a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). If disclosure would implicate only a de minimis privacy interest, the information must be disclosed; if the privacy interest at stake is greater than de minimis, the court must balance that privacy interest against the public interest in disclosure. *See Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 153 (D.C. Cir. 2006); *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989).

For many of the same reasons the IRS is not entitled to a blanket invocation of exemption 3, it is not entitled to one under exemption 6. The IRS argues that "third-party FOIA requesters in this case [would] be subject to harassment, stigma, retaliation, or embarrassment if their identities were revealed" and that "[t]he average citizen has ample reason not to want the world to know that someone else has used the FOIA to obtain information regarding his federal tax liabilities, or his tax examination status." Def.'s Mot. at 14. But, as explained above, in most

cases, revealing the organizational affiliations of first-party requesters and the names and organizational affiliations of third-party requesters would not reveal the *target* of the request. Moreover, FOIA requesters "freely and voluntarily address[] their inquiries to the IRS, without a hint of expectation that the nature and origin of their correspondence w[ill] be kept confidential." *Stauss v. IRS*, 516 F. Supp. 1218, 1223 (D.D.C. 1981); *see also* Dep't of Justice, Freedom of Information Act Guide, Exemption 6 (2004), https://www.justice.gov/oip/foia-guide-2004-edition-exemption-6 ("FOIA requesters, except when they are making first-party requests, do not ordinarily expect that their names will be kept private; therefore, release of their names would not cause even the minimal invasion of privacy necessary to trigger the balancing test.") (citing additional cases from this court).[3]

As with exemption 3, there may be some exceptions. The IRS notes, for example, that some topics on the publicly accessible FOIA log are sufficiently specific and personal such that disclosure of the requester's name would implicate more substantial privacy interests. *See* Def.'s Mot. at 14 (highlighting requests about "innocent spouse relief or about tax fraud on individual returns"). But, as Kwoka notes, she still would not know the *purpose* of the request. A person

---

[3] The IRS's counterarguments are unpersuasive. The IRS first argues that the privacy interest in this case "does not encompass only the names and organizational affiliations of the FOIA requesters; rather, it is the names of the requesters and their organizational affiliations in conjunction with the subject matter of the requests they make." Def.'s Reply at 9. But due to the vague topic descriptions in the publicly accessible log, adding the topic does not add much at all to the privacy interests at stake—and where the topic is more specific, the IRS can make case-by-case redactions if necessary. The IRS also attempts to distinguish *Stauss* as being "before the rise of the world-wide web." *Id.* But the mere fact that Kwoka might be able to locate more information about requesters that is already publicly accessible does not add to the privacy interest. Nor does the ability to discover information about others through the internet instead of traditional methods meaningfully distinguish *Stauss*—to say nothing of the Department of Justice's post-internet guidance indicating that FOIA requesters do not expect their names to be kept private.

7

requesting information about "innocent spouse relief," for example, could be doing so because he or she suspects a spouse of financial wrongdoing, but that person also could be interested in the subject for other reasons. *See* Pl.'s Cross-Mot. at 15. And at any rate, the existence of a few possible exceptions does not justify the IRS's blanket withholding here. If the IRS identifies specific instances where revealing a requester's name or organizational affiliation could indeed implicate substantial privacy interests, it can redact those portions, but it must justify its redactions "with reasonably specific detail." *Casey*, 656 F.2d at 738.[4]

    **C.**    **Other Bases for Withholding**

The IRS raises two additional arguments to justify withholding the records Kwoka seeks: first, the IRS argues that it cannot be required to create new records in response to a FOIA request; and second, the IRS argues that complying with Kwoka's request would require the agency to conduct an unreasonably burdensome search. Neither argument is compelling.

    **1.**    **New Records**

The IRS argues that because it "does not separately track FOIA requests seeking tax return information . . . and those seeking non-tax information" and because even some of the non-tax-information-seeking requests could be exempt, disclosure here "would require the IRS to manually access and review each of the electronic files of the 9,882 FOIA requests it received in Fiscal Year 2015" and then "create a new document consisting only of [non-exempt] records." Def.'s Mot. at 7. Similarly, the IRS argues that its FOIA disclosure office "does not maintain a log or list of third-party FOIA requests separate from first-party FOIA requests" and that "[t]o

---

[4] As Kwoka points out, other agencies' publicly accessible FOIA logs provide more detail about topics and "proactively includ[e] the name of the requester." Pl.'s Reply at 7, Dkt. 16. Thus, in cases where a taxpayer's identity is not revealed, it may be difficult for the IRS to justify withholding the names of requesters based solely on the fact that they requested some particular information from the IRS.

generate such a list (and thereby to generate a record), the IRS would have to individually access and review each of the 9,882 files that were responsive to [Kwoka's] FOIA request, and segregate those FOIA requests made by third parties." *Id.*

This argument fails because the IRS has admitted it has the information Kwoka seeks. *See* Smith Decl. ¶ 9b, Dkt. 9-2 ("Ms. Love-Smith also explained to me that the IRS does not have an automated process for distinguishing third-party requests (i.e., requests by those seeking records not about themselves) from first-party requests. Ms. Love-Smith, therefore, provided me with the requester name and organizational affiliation, if any, with respect to all 9,882 FOIA requests . . . ."). Although IRS records, in their current form, contain some first-party requesters' identities, the IRS can redact those portions of the records. "The argument that a document with some information deleted is a 'new document,' and therefore not subject to disclosure, has been flatly rejected." *Yeager v. Drug Enforcement Admin.*, 678 F.2d 315, 321 (D.C. Cir. 1982).

The IRS's argument that the withheld records are not "reasonably segregable," Def.'s Mot. at 9, is similarly unpersuasive. The segregability analysis focuses on whether the non-exempt portions of the document are "inextricably intertwined with exempt portions." *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (citing 5 U.S.C. § 552(b) and *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)). If the IRS means to argue that the exempt and non-exempt portions of the records in this case are "inextricably intertwined" in the sense that it would be impossible to produce meaningful information while redacting the exempt portions, that is simply wrong: redacting individual names and organizational affiliations of exempt entries (as assessed under the standards articulated above) would not render the remaining record unintelligible. *Cf. Mead Data Cent.*, 566 F.2d at 261 n.55 ("[A] court may decline to order an agency to commit significant time and

resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content."). If—as seems more likely—the IRS means to argue that the process of redaction will be difficult and time-consuming, then this argument simply merges with the IRS's unreasonable burden argument and is addressed below.

## 2. Unreasonably Burdensome Search

Finally, the IRS argues that "[e]ven if the information [Kwoka] seeks could be segregated and released without creating new records, requiring the IRS to conduct such an exercise would be an unreasonable burden on the agency." Def.'s Mot. at 9. "An agency need not honor a request that requires 'an unreasonably burdensome search.'" *Am. Fed. of Gov't Emps., Local 2782 v. U.S. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990) (quoting *Goland v. CIA*, 607 F.2d 339, 353 (D.C. Cir. 1978)).

In support of its argument, the IRS asserts that—"largely due to the limitations of the AFOIA system," which is "designed for IRS personnel to work on one case at a time"—a disclosure specialist could review only four or five requests per hour, which would require almost 2,200 hours of work to review all 9,882 FOIA requests from fiscal year 2015. Def.'s Mot. at 9–10; Rowe Decl. ¶¶ 14–15, Dkt. 9-3. Kwoka challenges this estimate, arguing that the IRS could engage in more efficient methods of review and that, if computer lag time is the issue, a disclosure specialist could multitask while records load. *See* Pl.'s Cross-Mot. at 21–23.

But even taking the IRS at its word, the Court does not find roughly 2,200 hours of review time to constitute an "unreasonably burdensome search." In fact, it is not a *search* at all: as Kwoka points out, the cases the IRS rely upon focus on the feasibility of a search for responsive records where the request is insufficiently specific. *See id.* at 20. Here, by contrast, the IRS has already located the responsive records and thus need not conduct any additional

10

search; the only issue is whether it must spend the time to review those records to make redactions.

Even if reviewing an already-identified set of documents qualifies as a search, courts in this Circuit have required production of records much more voluminous than the records requested here. *See, e.g.*, *Pub. Citizen v. Dep't of Educ.*, 292 F. Supp. 2d 1, 6 (D.D.C. 2003) (concluding agency offered insufficient specificity to find that searching 25,000 paper files would be unduly burdensome). When it comes to setting a production schedule, the IRS may limit the amount of time spent on this particular request to a reasonable number of hours or records per month. But, where the IRS already has all the requested records in its possession, the Court will not allow it to withhold the documents wholesale simply because it will (potentially) take 2,200 hours to review them for redactions.

## CONCLUSION

The Court concludes that neither exemption 3 nor exemption 6 justifies a blanket withholding of Kwoka's request for FOIA requesters' names and organizational affiliations. Nor does the Court find that production of the information would require the IRS to create a new record or be unreasonably burdensome. The Court does not, however, rule out the possibility that the IRS may be able to justify redactions in individual cases. The Court thus grants in part and denies in part both parties' motions for summary judgment. A separate order consistent with this decision accompanies this memorandum opinion.

*[signature]*
DABNEY L. FRIEDRICH
United States District Judge

Date: September 28, 2018